In the Matter of the Estate of JOHN F. FERRY, Sometimes Known as JOHN JOSEPH FERRY, Deceased.

Surrogate's Court, Richmond County, April 17, 1935.

*Frank H. Innes*, for the petitioner.

*Albert C. Fach*, for the administratrix, respondent.

SMITH, S. The decedent died on July 29, 1934. Letters of administration upon his estate were issued to the respondent, who claimed to be his widow, on August 14, 1934. On December 5, 1934, one William Ferry, a son of the decedent, made application to this court to revoke said letters on the ground that the respondent was not decedent's widow.

Upon the facts stipulated to by the attorneys for the parties and the testimony adduced before me on the trial of the issues, it appeared that the respondent was married to one Gustav Cotter on May 18, 1898, in the State of New York. That by reason of his inhuman treatment respondent and her children were driven from their home, and that in August, 1923, they removed to the city of Bayonne, in the State of New Jersey, where respondent acquired a legal domicile. Some years later, at the request of the decedent, she brought an action for divorce against said Gustav Cotter on the ground of cruel and inhuman treatment, and a final decree of divorce dissolving the marriage between the respondent and said Gustav Cotter was granted in the Court of Chancery of the State of New Jersey on March 4, 1927. Said Cotter was at the time of the institution of the action and ever since has been, a resident of the State of New York. He was served by publication and did not appear therein. The decedent paid the expenses of said divorce and married the respondent in the city of Hoboken, N. J., on May 22, 1927, and the decedent and the respondent lived together as husband and wife in the State of New Jersey for over a year and thereafter removed to the county of Richmond and were living together as husband and wife at the time the decedent died.

There can be no question as to the fact that the respondent was driven from her home by said Gustav Cotter, nor as to the good faith of the respondent both in establishing her domicile in the State of New Jersey and in bringing a proceeding for divorce therein, and unquestionably the decedent and the respondent were husband and wife in the State of New Jersey, and thus the sole determination to be made herein is whether the decree of divorce and the subsequent marriage are for any purpose valid in the State of New York.

Under the full faith and credit clause of the Federal Constitution, a State is not compelled to recognize a divorce granted in another

State without obtaining jurisdiction of the defendant, but in accordance with *its own public policy* may recognize such a divorce. (*Haddock* v. *Haddock*, 201 U. S. 562.)

The adjudged policy of this State has been to refuse to recognize as binding a decree of divorce obtained in a court of a sister State, not the matrimonial domicile, upon grounds insufficient for that purpose in this State, when the divorced defendant resided in this State and was not personally served with process and did not appear in the action (*Hubbard* v. *Hubbard*, 228 N. Y. 81, at p. 84, reciting *Olmsted* v. *Olmsted*, 190 id. 458; affd., 216 U. S. 386; *Winston* v. *Winston*, 165 N. Y. 553), and the reason for the stated policy of this State is its statutory adoption of the rule that there may be of right but one sufficient cause, to wit, adultery, for absolute divorce.

A judgment of a sister State cannot push its effect into another State to the subversion of its laws and defeat of *its policy* (*People* v. *Baker*, 76 N. Y. 78, 88), and also " *public policy* will not permit us to give effect, as against our own citizens, of a judgment affecting their marital status, so obtained on grounds thought by us to be insufficient." (*Ball* v. *Cross*, 231 N. Y. 329.)

And in *Matter of Kimball* (155 N. Y. 62) it was held that " it is equally well settled that the judgment of a court of sister state has no binding effect in the state, unless the court had jurisdiction of the subject matter and of the person of the parties, and that want of jurisdiction may always be interposed against a judgment when it is sought to be enforced or when any benefit is claimed for or under it. * * * Such a judgment is void and of no force or effect in this state." Said decision cited among other authorities *Kerr* v. *Kerr* (41 N. Y. 272).

All of the relevant judicial decisions of the State are in accord in refusing to recognize as binding a decree of divorce obtained in the courts of a sister State, not the matrimonial domicile, upon grounds insufficient for that purpose in this State when the divorced defendant resided in this State and was not personally served with process and did not appear in the action, and no claim can be made that the decree of divorce granted in the State of New Jersey was not void and of no force and effect in this State against Gustav Cotter, respondent's first husband, and being void as to Cotter, it cannot be deemed valid, under the public policy of this State, for any other purpose, yet the respondent claims that by reason of the holding in *Kaufman* v. *Kaufman* (177 App. Div. 162), where the facts are claimed to be similar to the proven facts in the present instance, and by reason of the holdings in the cases cited therein, that the distributees of the estate of the decedent are estopped from denying

the validity of the divorce and the marriage in the State of New Jersey.

In *Kaufman* v. *Kaufman* (*supra*) the court refused to grant an annulment, but in *Fischer* v. *Fischer* (254 N. Y. 463, at p. 466) the court said that in *Kaufman* v. *Kaufman* the New York citizenship and residence of the first husband were unproved and that " the judgment in the *Kaufman* case never was reviewed by this court," and that " in *Hubbard* v. *Hubbard* it was cited on the briefs but was not mentioned in the opinion." To assume that the Court of Appeals would have affirmed the case of *Kaufman* v. *Kaufman* and refused to grant an annulment of a marriage good in the State where contracted would not indicate an intention to overrule the public policy of this State in relation to recognition of divorce decrees of sister States, but would rather indicate to the mind of this court that it refused to permit in such instances the use of the forums of this State to change the matrimonial status of the parties in the State where the marriage was recognized as valid.

There is no demand for affirmative relief in the matter in issue. The petitioner alleges that the administratrix is not the widow of the decedent, and, therefore, as in *Fischer* v. *Fischer* (*supra*), she is put to her proof to show that she is the widow of the decedent in the State of New York.

To hold that the respondent was the widow of the decedent by estoppel would be to contravene the public policy of the State and the relevant judicial decisions, for, as stated in *Hubbard* v. *Hubbard* (*supra*), " the principle of comity between the states of the United States does not require of a state the operation of a divorce decree of a sister state which violates the principles of morality, or the *public policy*, or municipal regulations established by it. Apart from constitutional obligations the law of no state can have effect. as law beyond the territory of the state imposing it, unless by permission of the state where it is allowed to operate.

" The policy of this state is not embodied in any legislative enactment or is not a rule of universal law. It exists to promote the permanency of the marriage contracts and the morality of the citizens of the state. Whether or not the operation of a foreign decree of divorce in a given case will *contravene the policy* or wrong or injure citizens of the state is exclusively for its courts to determine. They are the final judges of the occasions on which the exercise of comity will or will not make for justice or morality. The exercise rests in sound judicial discretion *guided and controlled by the policy of the state, relevant judicial decisions and the circumstances of the case.*"

In view of the public policy of this State to refuse to recognize as binding a decree of divorce obtained in a court of a sister State, as in the present instance, to hold that the respondent was the widow of the decedent by reason of his advice and persuasions, would be to contravene the public policy of this State and establish a precedent that would permit the procuring of divorces in similar situations in sister States which would be recognizable as valid in this State, for causes other than the one cause permitted by statute.

I cannot so hold, and, therefore, find that the respondent was not the wife of the decedent in the State of New York, and the letters of administration heretofore granted to her as the widow of the decedent are revoked.

In view of all of the facts, however, no costs are granted against the respondent.