ANDREW M. NEWBURGER AND SHIRLEY P. NEWBURGER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3075–71.    Filed January 15, 1974.

*Richard H. Wels,* for the petitioners.
*Ronald A. Wagenheim,* for the respondent.

QUEALY, *Judge:* Respondent has determined deficiencies in the Federal income tax of petitioners for the taxable years 1965 through 1968 in the amounts of $5,394.11, $5,460, $5,460, and $5,869.50, respectively.

The sole question for our decision is whether certain payments made by petitioner Andrew Newburger to his former wife, Barbara Newman, pursuant to a New York annulment decree qualify as alimony under section 71(a)(1)[1] and are therefore deductible by him under section 215.

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties. Such facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners Andrew M. Newburger and Shirley P. Newburger are husband and wife. They filed timely joint Federal income tax returns for the taxable years 1965, 1966, 1967, and 1968 with the district director of internal revenue at New York, N.Y. At the time of the filing of the petition herein, the legal residence of petitioners was New York, N.Y. Shirley P. Newburger is a petitioner herein only by virtue of having filed a joint return for the years in issue with Andrew M. Newburger.

Prior to his marriage to his present wife, Andrew M. Newburger (hereinafter referred to as Andrew) was formerly married to Barbara (Newburger) Newman (hereinafter referred to as Barbara), petitioner in a related action involving the same issue as involved herein.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Barbara was first married in 1950 at the age of 18 years. She had a child by this marriage in 1952, but separated from her husband a month after the baby was born. Her husband subsequently obtained an ex parte decree of divorce in the State of Nevada. On December 30, 1955, she married Andrew.

On April 2, 1958, Barbara, as plaintiff, instituted an action for separation against Andrew, as defendant, in the Supreme Court of the State of New York, County of Westchester, and thereupon applied for and obtained an order for temporary alimony in the sum of $200 per week. Andrew responded to such action by interposing a counterclaim for annulment based on the invalidity of the divorce obtained by her first husband. The counterclaim was tried and a counterjudgment and decree of the Supreme Court of the State of New York dated October 25, 1960, and duly entered in the office of the Clerk of Westchester County on October 31, 1960, was issued in Andrew's favor, granting the requested annulment. The counterjudgment decreed that "the marriage heretofore existing between the plaintiff and the defendant was at the inception and is, null and void." It also directed a hearing be held to determine the amount of permanent alimony which Barbara was entitled to receive under the provisions of section 1140-a of the New York Civil Practice Act. In the interim, she continued to receive $200 per week.

The hearing on the issue of permanent support was held and on January 18, 1962, an order was made amending the decree of annulment and directing Andrew to pay Barbara $150 per week for her support. Pursuant to the above order, Andrew paid Barbara the sum total of $7,800 for each of the years in question.

### OPINION

The sole issue for our decision is whether the periodic payments made by Andrew to his former wife, Barbara, during each of the taxable years 1965 through 1968 pursuant to a New York annulment decree constitute alimony to her under section 71(a)(1)[2] and, hence, deductible to him under section 215.[3]

---

[2] Sec. 71 provides, in pertinent part, as follows:

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

[3] Sec. 215 provides, in pertinent part, as follows:

SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

The dispute between the parties involves whether the periodic payments in question can be characterized under section 71(a)(1) as being made "in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree."

Respondent contends that the payments were not in discharge of a legal obligation founded on a marital relationship because under New York law none ever existed. His position is that under New York Domestic Relations Law, sec. 6,[4] the marital relationship between Andrew and Barbara was absolutely void at its inception since under New York law she was still married to her first husband at the time that she purported to marry Andrew. The respondent argues that the marriage was void ab initio in New York citing *Wehner* v. *Wehner*, 66 N.Y.S. 2d 703 (Sup. Ct. 1946), and *Kaufman* v. *Kaufman*, 177 App. Div. 162, 163 N.Y.S. 566 (1917). This, he argues, is to be distinguished from a voidable marriage which is valid for all purposes until judicially declared void. N.Y. Dom. Rel. Law sec. 7; *Price* v. *Price*, 124 N.Y. 589, 27 N.E. 383 (1891); *Matturro* v. *Matturro*, 111 N.Y.S. 2d 533 (Sup. Ct. 1952).

In *George F. Reisman*, 49 T.C. 570 (1968), acq. 1971-2 C.B. 3, the Court was faced with a similar situation. The wife obtained an annulment decree from the Supreme Court of New York based on the husband's fraudulent misrepresentation of his premarital financial condition. Acting on the authority given to it under the New York Civil Practice Act sec. 1140-a, the New York court directed the husband to provide his wife and child with support payments of a specified amount.[5] Under New York law, the husband clearly had a legal obligation founded on a marital relationship to support his wife and child, and the annulment decree fixed the terms of such obligation. This Court therefore held that it was immaterial that the grounds for the annulment arose prior to instead of subsequent to the marriage. See *Anne S. Laster*, 48 T.C. 178 (1967); *Lily R. Reighley*, 17 T.C. 344 (1951). Such payments fell within the ambit of section 71(a)(1).

In *Reisman* the fact that the payments were made pursuant to an "annulment decree" instead of a "divorce decree" was held not to be determinative since this Court is not bound by New York's character-

---

[4] N.Y. Dom. Rel. Law sec. 6 provides, in pertinent part, as follows:

Sec. 6. Void marriages

A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either:

1. Such former marriage has been annulled or has been dissolved for a cause other than the adultery of such person * * *

[5] New York Civil Practice Act, sec. 1140-a, was incorporated into and superceded by N.Y. Dom. Rel. Law sec. 236 (1964), which provides, in pertinent part, as follows:

Sec. 236. Alimony, temporary and permanent

In any action or proceeding brought (1) during the lifetime of both parties to the marriage to annul a marriage or declare the nullity of a void marriage, or (2) for a separation, or (3) for a divorce, the court may direct the husband to provide suitably for the support of the wife * * *

ization of its decree in construing the language of a Federal tax statute. We concluded that the statute in question was more concerned with the function of the payments than with the label of the action under which the payments were decreed.

We find no difficulty in extending our holding in the *Reisman* case to the facts of our case. The only distinction we can find between the two cases is that the annulment in our case was based on a void marriage instead of a voidable marriage. It is apparent, however, that New York chose to disregard such distinctions in enacting New York Civil Practice Act sec. 1140–a. As the Court of Appeals of New York stated in *Gaines* v. *Jacobsen*, 308 N.Y. 218, 124 N.E. 2d 290, 294 (1954):

> By writing section 1140–a into the law, the legislature has chosen, without regard to whether the marriage is void or voidable, to attach to annulled marriages sufficient validity and significance to support an award of alimony, in other words, to serve, the same as any valid marriage would, as the foundation of a continuing duty to support the wife after the marriage is terminated. See Johnson v. Johnson, 295 N.Y. 477, 68 N.E. 2d 499. It has declared, in effect, that, for the purpose of sustaining a right to support after annulment, the annulled marriage is no longer to be deemed a nullity, "effaced as if it had never been." * * *

In deciding to attach a certain limited vitality to an annulled marriage, New York has clearly carved out an exception to the literal language of section 6 of the Domestic Relations Law.[6] Since New York has chosen not to distinguish between the void and voidable relationship for purposes of providing support to the wife in annulment actions, we decline to do so.

Under New York law, the putative marriage between Andrew and Barbara was recognized for purposes of creating a legal obligation upon Andrew to support his wife. The annulment decree fixed that obligation in monetary terms. The fact that under the statute, the issue of support was discretionary with the court does not make it any less a legal obligation.

Accordingly, we find that the periodic payments made by Andrew to Barbara during each of the years in question were made in recognition of a general legal obligation, arising out of the marital relationship, to support his wife which was made specific by the annulment decree. The payments are therefore alimony to her within the language of section 71(a)(1) and hence are deductible by him under section 215.

*Decision will be entered for the petitioners.*

---

[6] See also N.Y. Dom. Rel. Law sec. 24, which legitimizes children born of void or voidable marriages.